FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ SEP 0 1 2011 ★
LONG ISLAND OFFICE
SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SHMUEL LOWENBEIN individually and on behalf of any and all similarly situated consumers

    Plaintiff,

-against-

FREDERICK J. HANNA & ASSOCIATES, P.C.

    Defendant.

---

CLASS ACTION COMPLAINT

CV 11 4237

COGAN, J.

Plaintiff, by and through his attorney, Adam J. Fishbein, as and for his complaint alleges as follows:

## INTRODUCTION

0.1    This is an action for damages brought by an individual consumer and on behalf of a class for defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") which prohibits debt collectors from engaging in abusive, deceptive and unfair practices and under the Telephone Communications Privacy Act.

## PARTIES

0.2    Plaintiff is a natural person residing in Kings County, New York.

0.3    Upon information and belief, defendant is a law firm which does business as a professional corporation and who is a debt collector as defined pursuant to 15 U.S.C. § 1692a(6) with its principal place of business in Marietta, Georgia.

## JURISDICTION

0.4    This Court has jurisdiction pursuant to 15 U.S.C. § 1692k (FDCPA) and 28 U.S.C. § 1331 and supplemental or original jurisdiction under the TCPA.

## AS AND FOR A FIRST CAUSE OF ACTION

1.    Plaintiff realleges paragraphs 0.1 through 0.4 as if fully restated herein.

1

2. That a personal debt was allegedly incurred by the plaintiffs to Chase Bank.

3. That at a time unknown to the plaintiff herein, the aforementioned debts were referred to the defendant for collection.

4. The defendant sent a letter to plaintiff dated February 3, 2011.

5. Plaintiffs received said letter.

6. Said letters state in pertinent part as follows: "I had previously written you regarding your debt obligation placed with my office for collection. I had hoped that you would have satisfied this matter to avoid any additional collection activity."

7. Said language and letterhead implies that Attorney Frederick J. Hanna, the principle of the defendant law firm is personally involved in collecting the debt.

8. Said letter implies that Attorney Hanna is personally involved in presenting the plaintiff with the settlement amount.

9. The defendant sent the said letter to the plaintiff which was mass produced and computer generated allegedly from defendant.

10. That a mass-produced computer generated letter bearing no signature was forwarded to the plaintiff.

11. Upon information and belief, that said letter was a mass-produced, computer generated letter, and was designed to give the impression that said letter was forwarded by an attorney when said letter was not personally reviewed by an attorney.

12. That upon information and belief neither defendant nor any attorney admitted to practice law reviewed the plaintiff's alleged delinquent account prior to the date of the letter at issue.

13. The said letter is violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(3) by making the false representation that the communication is from an attorney and 1692e(10) that Attorney Hanna is personally involved in collecting the debt when he is not. The defendant was found liable for this type of practice in *Cordes v. Hanna* (see attached hereto).

14. On or about March 3, 2011 defendant left a pre-scripted or pre recorded message for the plaintiff.

15. Said message did not state that the communication was from a debt collector.

16. Defendant caused plaintiff to incur charges for defendant's collection communications when plaintiff had no reason to know the communication's purpose.

17. Defendant was prohibited from placing a call that will cause a charge to plaintiff without having notified plaintiff to expect it and without having announced its collection purpose.

18. Defendant called plaintiff's wireless phone number and plaintiff was charged a toll on all those incoming calls. Plaintiff was not alerted to the calls beforehand.

19. Said message is in violation of 15 U.S.C. §§ 1692e(10) and 1692e(11) for failing to indicate that the message was from a debt collector which constitutes a deceptive practice and 1692f for unlawfully causing the plaintiff to incur a charge.

20. That as a result of the above violations, defendant is liable to the plaintiff for statutory damages in an amount to be determined at the time of trial, plus costs and attorney's fees.

21. This cause of action is brought on behalf of plaintiffs and the members of a two classes and a sub-class.

22. Class A consists of consumers who received the same form letter, as did the plaintiff.

23. Class A consists of all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter (a) bearing the defendant's letterhead in substantially the same form as the letters sent to the plaintiff on or about February 3, 2011 (b) the collection letters were sent to a consumer seeking payment of a consumer debt; and (c) the collection letters were not returned by the postal service as undelivered, (d) and that the letters contained violations of 15 U.S.C. §§ 1692e(3) and 1692e(10).

3

24. Class B consists of all persons whom Defendant's records reflect resided in the State of New York and who were left a telephonic message (a) from the defendant where the message did not state that the message was from a debt collector or a communication concerning a debt (b) the message was an attempt at seeking payment of a consumer debt; and (c) and that the message contained violations of 15 U.S.C. §§ 1692e(11) and 1692e(10).

25. A sub-class exists for those class members who were charged for the receipt of the message in violation of 1692f(1).

26. Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

(A) Based on the fact that mass produced collection letters and telephonic messages are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

(B) There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendant violated the FDCPA.

(C) The only individual issue is the identification of the consumers who received the letters and messages, (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendant.

(D) The claims of the plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

(E) The plaintiff will fairly and adequately represent the class members' interests. The plaintiff has retained counsel experienced in bringing class actions and collection-

abuse claims. The plaintiff's interests are consistent with those of the members of the class.

27. Class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

28. If the facts are discovered to be appropriate, the plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

29. Collection letters, such as those sent by the defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

WHEREFORE, plaintiff respectfully prays that judgment be entered against defendant in the amount of:

(a) Statutory damages pursuant to 15 U.S.C. § 1692k in an amount to be determined at the time of trial.

(b) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

(c) For such other and further relief as may be just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION

*Violations of the Telephone Consumer Protection Act brought by plaintiff*

30. Plaintiff restates, realleges, and incorporates herein by reference, paragraphs 1-8 as if set forth fully in this Cause of Action.

31. The defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by initiating fifty-eight (58) telephone calls to the plaintiff's wireless telephone number using an artificial and/or pre-recorded voice to deliver messages without having the consent of the plaintiff to leave such messages.

32. Defendant has repeatedly violated the TCPA by the calls made to Plaintiff, specifically the numerous calls by illegal automatic dialers, predictive dialers, and/or pre-recorded messages that have been unleashed against plaintiff by defendant also without having included the proper name of the defendant or any name for that matter.

33. There is no exception or justification for the numerous violations of the TCPA by defendant as plaintiffs have not consented to the use of the wireless telephone number at issue.

34. Each call is a separate violation and entitles plaintiffs to statutory damages against defendant in the amount of $500.00 per call.

35. Plaintiff asserts that since the violations were made intentionally or recklessly that the violations be assessed a statutory damage of $1,500.00 per call. 47 U.S.C. § 227(b)(3).

36. All actions taken by Defendant were taken with malice, were done willfully, recklessly and/or were done with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the TCPA and/or that knew or

should have known that its actions were in reckless disregard of the TCPA. Courts have found collection agency's have willfully or knowingly violated the TCPA simply by calling any plaintiff on his/her cell phone using a pre-recorded voice, regardless of whether it knew it was violating the law. (*Sengenberger v. Credit Control Services, Inc.*, 2010 U.S. Dist. LEXIS 43874)

37. The defendant has repeatedly violated the TCPA by failing to leave the legal name of the defendant in the messages left for the plaintiff as states as follows in 47 C.F.R. 64.1200(b)(1) states:

"(b) All artificial or prerecorded telephone messages shall:

At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with State Corporation Commission (or comparable regulatory authority) must be stated. The FCC further provided that:

With respect to the caller's name, the prerecorded message must contain, at a minimum, the legal name under which the business, individual or entity calling is registered to operate. The Commission recognizes that some businesses use "d/b/as" or aliases for marketing purposes. The rule does not prohibit the use of such additional information, provided the legal name of the business is also stated."

38. The FCC did not intend to exempt automated collection calls from the requirements of 47 C.F.R. 64.1200(b)(1), even if consent was given in the case where the debt collector failed to leave the legal name of the company. (*Sengenberger v. Credit Control Services, Inc.*, 2010 U.S. Dist. LEXIS 43874)

39. Defendant has repeatedly violated the TCPA by the calls made to plaintiffs specifically the numerous calls by illegally by not stating its legal name in its prerecorded messages in violation of the Telephone Consumer Protection Act

40. The actions of the defendant violate the TCPA.

41. Because the defendant intentionally violated the TCPA, the plaintiff is entitled to damages in accordance with the TCPA namely $1500 for each call where the defendant failed to obtain prior consent from the plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against the defendant and award damages as follows:

    (a) Statutory damages provided under the TCPA and injunctive relief;

    (b) Any other relief that this Court deems appropriate and just under the circumstances.

## AS AND FOR A THIRD CAUSE OF ACTION

*Violations of the FDCPA on an individual basis*

42. Plaintiff restates, realleges, and incorporates herein by reference, paragraphs 1-8 as if set forth fully in this Cause of Action.

43. That on or about December 2, 2010 defendant left a message for the plaintiff which disclosed that it was concerning a debt.

44. The message which set forth that the message was from a debt collector was overheard by the plantiff's sister in law.

45. That on or about March 7, 2010 defendant left a telephone message on the plaintiff's mother in law's phone which caused the plaintiff stress over having the plaintiff's mother in law being inconvenienced and bothered about the plaintiff's private business.

46. These messages which violated the plaintiff's right of privacy, were extremely embarrassing for the plaintiff.

47. Plaintiff suffered emotional distress damage due to the defendant's actions.

48. Defendant violated the FDCPA. Defendant's violations include, but are not limited to, the following:

(a) The defendant violated 15 U.S.C. § 1692c by disclosing to an unauthorized third party that plaintiff owed a debt or contacting a member of the plaintiff's family where the defendant already had plaintiff's contact information.

49. As a result of the above violations of the FDCPA, defendant is liable to the plaintiff for the sum of plaintiff's statutory and actual damages to be determined at trial, plus costs and attorney's fees.

WHEREFORE, plaintiff respectfully prays that judgment be entered against defendant in the amount of:

(a) Statutory and actual damages pursuant to 15 U.S.C. § 1692k in an amount to be determined at the time of trial.

(b) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

(c) For such other and further relief as may be just and proper.

Dated: Cedarhurst, New York
August 31, 2011

_____
Adam J. Fishbein, P.C. (AF-9508)
Attorney At Law
**Attorney for the Plaintiffs**
483 Chestnut Street
Cedarhurst, New York 11516
Telephone (516) 791-4400
Facsimile (516) 791-4411

Plaintiff requests trial by jury on all issues so triable.

_____
Adam J. Fishbein (AF-9508)

Jacquelyn Cordes, Plaintiff,
v.
Frederick J. Hanna & Associates, P.C., Defendant.

Civ. No. 10-1344 (RHK/TNL).

United States District Court, D. Minnesota.

June 7, 2011.

Trista M. Roy, Consumer Justice Center, P.A., Vadnais Heights, Minnesota, for Plaintiff.

Thomas P. Kane, Paulette S. Sarp, Nadia B. Hasan, Hinshaw & Culbertson LLP, Minneapolis, Minnesota, for Defendant.

# MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

# INTRODUCTION

Plaintiff Jacquelyn Cordes ("Cordes") alleges in this action that Defendant Frederick J. Hanna & Associates, P.C. ("Hanna") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by (1) leaving multiple messages on her home voicemail that were overheard by others and (2) sending her a letter suggesting that an attorney had reviewed her account, when there had been no such review. Presently before the Court is Cordes's Motion for Partial Summary Judgment as to Hanna's liability. For the reasons set forth below, the Court will grant her Motion.

# BACKGROUND

The pertinent facts are undisputed. At all relevant times, Cordes lived with her boyfriend, David Pitsch, and a friend, Jessica Joiner. The three shared voicemail on their home telephone number.

Prior to December 2009, Cordes incurred credit-card debt with Chase Bank ("Chase"). After her account became past-due, Chase transferred it to Hanna, a law firm, for collection. Between December 3, 2009, and January 20, 2010, Hanna left seven messages for Cordes on her home voicemail, identifying itself as a debt collector; some were heard by Pitsch and Joiner.

Hanna later sent Cordes a letter, dated February 9, 2010, on letterhead indicating it was from "FREDERICK J. HANNA & ASSOCIATES, P.C., Attorneys at Law." The letter provided:

I had previously written you regarding your debt obligation placed with my office for collection. I had hoped that you would have satisfied this matter to avoid any additional collection activity.
In order to resolve the account, our client is offering to settle this debt. The settlement offer is for $1,692.27, or 40% of the above unpaid balance. It must be received in our office within fifteen days from the date of this letter. Upon receipt, my client will be notified of the funds received, and they will mark the account settled. Our client makes no representation about tax consequences this may have or any reporting requirements that may be imposed on them. You should consult independent tax counsel of your own choosing if you desire advice about any tax consequences which may result from this settlement.
This is an attempt to collect a debt. Any information obtained will be used for that purpose.

The letter was signed by "Frederick J. Hanna & Associates, P.C." rather than any individual attorney. Frederick J. Hanna, Hanna's principal, has acknowledged that this was a "form" letter, generated automatically "absent a certain code being added to a file" (which did not occur here). He has also acknowledged that none of Hanna's twelve attorneys reviewed Cordes's file before the letter was sent.

Cordes commenced this action in April 2010, asserting two claims against Hanna under the FDCPA: (1) the voicemails constituted prohibited communications with third parties, in violation of 15 U.S.C. § 1692c(b), and (2) the February 9, 2010 letter misleadingly implied that an attorney had reviewed her account when no such review had occurred, in violation of 15 U.S.C. § 1692e(3). She now moves for partial summary judgment as to Hanna's liability on these claims.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

# I. The FDCPA generally

Congress enacted the FDCPA in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). It is intended "to eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 318-319 (8th Cir. 2004). As this Court has previously noted, the FDCPA is a "broad remedial statute that imposes strict liability on debt collectors; its terms are to be applied 'in a liberal manner.'" Owens v. Hellmuth & Johnson, PLLC, 550 F. Supp. 2d 1060, 1063 (D. Minn. 2008) (Kyle, J.) (quoting Picht v. Hawks, 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999) (Noel, M.J.), aff'd, 236 F.3d 446 (8th Cir. 2001)). With these precepts in mind, the Court turns to Cordes's specific allegations.

# II. Section 1692c(b)

In her first claim, Cordes asserts that Hanna's voicemails violated 15 U.S.C. § 1692c(b). That portion of the FDCPA provides, in pertinent part:

[W]ithout the prior consent of the consumer given directly to the debt collector . . .[,] a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Cordes argues that when Pitsch and Joiner heard the voicemails, Hanna's liability under this provision was triggered because it had "communicated" with a third party "in connection with the collection of" her debt. (Pl. Mem. at 7-8.) In response, while not disputing leaving the voicemails, Hanna argues that it cannot be liable because it did not *intentionally* communicate with Pitsch and Joiner; they simply heard voicemail messages it had left for Cordes. (Def. Mem. at 8-14.)

In support of its argument, Hanna points to two decisions from this Court, Baker v. Allstate Financial Services, Inc., 554 F. Supp. 2d 945, 950 (D. Minn. 2008) (Ericksen, J., adopting Report & Recommendation of Graham, M.J.), and Mark v. J.C. Christensen & Associates, Inc., Civ. No. 09-100, 2009 WL 2407700 (D. Minn. Aug. 4, 2009) (Montgomery, J.). Both cases are inapposite, as neither arose under Section 1692c(b). Baker analyzed a claim under a different section of the FDCPA, 15 U.S.C. § 1692d(6), which prohibits debt-collection telephone calls without meaningful disclosure of the caller's identity. Mark addressed that same section of the FDCPA, in connection with the defendant's claim that it was an unconstitutional restraint on commercial speech in violation of the First Amendment. In passing, both Baker and Mark suggested that unintentional disclosures to third parties would not support a claim under Section 1692c(b). See Baker, 554 F. Supp. 2d at 950; Mark, 2009 WL 2407700, at *5. But in

neither case was this Court expressly called upon to determine whether an unintentional disclosure to a third party triggers liability under this section.

However, another decision from this Court, which was decided little more than one month ago, directly answered this question. In Zortman v. J.C. Christensen & Associates, Inc., Civ. No. 10-3086, 2011 WL 1630935 (D. Minn. Apr. 29, 2011) (Ericksen, J.), the debt-collector defendant left several voicemail messages for the plaintiff on her home and cellular phones, which were overheard by her children. The plaintiff claimed that the messages violated Section 1692c(b), and the defendant responded that it could not be held liable because it did not "purposefully or deliberately disclose . . . information to a third party." Id. at *1. The Court rejected this argument.

Zortman offered several persuasive reasons why the defendant's argument did not hold water. It noted that Section 1692c(b), on its face, contains no scienter requirement, unlike other portions of the FDCPA. Id. at *5 ("Where Congress wanted to include an intent element as part of an FDCPA violation, it has done so explicitly."). It also recognized that the FDCPA is a strict-liability statute, "which conflicts with requiring deliberate or purposeful intent." Id.; accord, e.g., Lovelace v. Stephens & Michaels Assocs., Inc., No. 07-10956, 2007 WL 3333019, at *3 (E.D. Mich. Nov. 9, 2007) ("The FDCPA, including § 1692c(b), is a strict liability statute and therefore does not require a showing of intentional conduct on the part of a debt collector to give rise to liability."). In addition, Zortman pointed out that the term "communicate" does not focus on the intended recipient, but rather turns on whether the speaker "shares with or conveys information to another" — "for example, one may communicate with an unintended audience." 2011 WL 1630935, at *5; see also 15 U.S.C. § 1692a(2) (defining "communication" as "the conveying of information regarding a debt directly *or indirectly* to any person through any medium") (emphasis added).[1] Finally, Zortman recognized that the FDCPA's "bona fide error defense"[2] was inconsistent with a requirement that a debt collector purposefully or intentionally communicate with a third party in order to be held liable. 2011 WL 1630935, at *5.

Several other district courts have reached the same conclusion as Zortman. See, e.g., Leahey v. Franklin Collection Serv., Inc., 756 F. Supp. 2d 1322, 1327 (N.D. Ala. 2010); Berg v. Merchs. Ass'n Collection Div., 586 F. Supp. 2d 1336, 1341 (S.D. Fla. 2008); FTC v. Check Enforcement, No. Civ. A. 03-2115, 2005 WL 1677480, at *8 (D.N.J. July 18, 2005). The undersigned fully agrees with the reasoning in these cases (and Zortman) and will follow them here. Accordingly, the Court rejects Hanna's argument that it cannot be liable here absent intentional or deliberate disclosure to Pitsch and Joiner. And because Hanna raises no other argument to avoid liability, and because there is no dispute that Pitsch and Joiner heard at least some of the messages Hanna left for Cordes, the Court determines that she is entitled to judgment in her favor as to Hanna's liability under Section 1692c(b).

## III. Section 1692e(3)

The FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It enumerates a non-exhaustive list of sixteen debt-collection practices that run afoul of this proscription, including "the false representation or implication that [a] communication is from an attorney." Id. § 1692e(3). A substantial number of courts have held that a debt-collection letter from a law firm or lawyer violates Section 1692e(3) if an attorney was not "directly and personally involved" with the debtor's account — such as by reviewing the debtor's file — before the letter was sent. See, e..g, Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1237-38 (5th Cir. 1997); Avila v. Rubin, 84 F.3d 222, 229 (7th Cir. 1996); Clomon v. Jackson, 988 F.2d 1314, 1320-21 (2d Cir. 1993); Martsolf v. JBC Legal Grp., P.C., No. 1:04-CV-1346, 2008 WL 275719, at *7 (M.D. Pa. Jan. 30, 2008); Sonmore v. Checkrite Recovery Servs., Inc., 187 F. Supp. 2d 1128, 1133 (D. Minn. 2001) (Alsop, J.); but see Danielson v. Hicks, Civ. No. 3-94-1053, 1995 WL 767290 (D. Minn. Oct. 26, 1995) (Davis, J.).[3] This is because letters on law-firm letterhead imply meaningful attorney involvement, which does not exist absent participation by an attorney in the debt-collection process. See, e.g., Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 364 (2d Cir. 2005) ("[W]e [have] established that a letter sent on law firm letterhead . . . does represent a level of attorney involvement to the debtor receiving the letter. And if the attorney or firm had not, in fact, engaged in that implied level of involvement, the letter is . . . misleading within the meaning of the FDCPA.").[4]

Cordes asserts that the letter she received from Hanna violated Section 1692e(3) because it falsely implied that one of its attorneys had performed a meaningful review of her account before sending the letter, when in fact no such review had occurred. Hanna acknowledges that no attorney personally reviewed Cordes's file or the letter "automatically" sent to her before it was mailed. (Hanna Dep. at 45-48.) It also acknowledges that the letter was a "form letter." (Id.) Nevertheless, it contends that the letter did not violate Section 1692e(3) because its "form" contents were created by an attorney (Frederick J. Hanna) and it was sent pursuant to his standing instructions. (Mem. in Opp'n at 14.) This, however, does not constitute meaningful attorney involvement.

The Second Circuit confronted similar facts in Clomon. There, the attorney defendant approved the form of dunning letters[5] sent by a collection agency and also "approved the procedures according to which th[e] letters were sent." 988 F.2d at 1317. He did not have any specific involvement with each debtor's account, however, such as reviewing the debtor's file or the particular letter being mailed. Id. The Second Circuit concluded that the challenged letters, despite bearing the defendant attorney's signature, violated Section 1692e(3) because, although *literally* "from" an attorney, they "were not 'from' [him] in any meaningful sense of that word." Id. at 1320; accord, e.g., Avila, 84 F.3d at 229. The same result should obtain here.[6]

Pointing to Mizrahi v. Network Recovery Services, Inc., No. 98-CV-4528, 1999 WL 33127737 (E.D.N.Y. Nov. 5, 1999), Hanna argues that it is lawful for a law-firm staff member to send a debt-collection letter on the firm's letterhead. (Mem. in Opp'n at 15-17.) But Mizrahi involved facts dissimilar to the case at bar. Indeed, the evidence there showed that an attorney performed an initial review of every file she received, which

lasted between two and four hours. 1999 WL 33127737, at *2. As a result, it was clear that "the involvement of the defendant [attorney] in the [debt-collection] process [was] both personal and substantial." Id. at *4. No similar facts exist here.

The Court concludes that Hanna's letter violated Section 1692e(3) under the undisputed facts of this case.

# CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, IT IS ORDERED that Cordes's Motion for Partial Summary Judgment (Doc. No. 18) is GRANTED. As a result, only the issue of Cordes's damages remains for trial.[7]

[1] Pointing to legislative history, Hanna argues that Congress intended the word "communicate" to mean "contact." (Mem. in Opp'n at 10.) But the FDCPA expressly defines the term "communication," see 15 U.S.C. § 1692a(2), and the Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). In any event, the Court perceives no material difference between the word "communicate" and the word "contact." See The American Heritage Dictionary 315 (2d coll. ed. 1985) (defining "contact" as "[t]he state of being in communication").

[2] The "bona fide error defense" offers debt collectors "a narrow exception to the strict liability imposed by the FDCPA." Zortman, 2011 WL 1630935, at *5. It provides that a debt collector may escape liability "if [it] shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). As Zortman observed, "[i]f violations of the FDCPA required deliberate or purposeful intent, then the bona fide error defense's `not intentional' element would tend toward surplusage." 2011 WL 1630935, at *5. Notably, Hanna has expressly disavowed relying upon the bona fide error defense in this case (see Hanna Dep. at 50-51), and in any event did not assert the defense in its Answer. See Friedman & Friedman, Ltd. v. Tim McCandless, Inc., 606 F.3d 494, 498 (8th Cir. 2010) (noting that affirmative defense not raised in answer is generally forfeited).

[3] Hanna acknowledges the conflict between Danielson and Sonmore and urges the Court to follow the former case. (See Mem. in Opp'n at 16 n.5.) The Court declines to do so in light of, in its view, the better-reasoned cases to the contrary, as referenced above.

[4] This is not to say that a law firm can *never* send a debt-collection letter without an attorney's meaningful involvement in the collection process, but it may do so only if it "includes *disclaimers* that . . . make clear . . . that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney." Greco, 412 F.3d at 364 (emphasis in original). Indeed, in another case brought against Hanna, the letter in question was on the same letterhead as the letter to Cordes here but also contained the disclaimer, "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account." Walsh v. Frederick J. Hanna & Assocs, P.C., No. 2:10-cv-02720, 2010 WL 5394624, at *2 (E.D. Cal. Dec. 21, 2010). Walsh found no violation of the FDCPA because, in light of the disclaimer, the letter could not, and did not, falsely or misleadingly imply meaningful attorney involvement. Id. at *3. No similar disclaimer is found in the letter here.

[5] "`Dun' means to demand payment from a delinquent debtor. Debt-collection letters, therefore, are frequently referred to as `dunning letters.'" Owens, 550 F. Supp. 2d at 1063 n.1 (internal citation omitted).

[6] Hanna argues that Clomon is distinguishable because the letters there bore the signature of a *specific* attorney, whereas the letter here is signed "Frederick J. Hanna & Associates, P.C." (See Mem. in Opp'n at 14-15.) This is a distinction without a difference. Just as a "letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent," a dunning letter "on an attorney's letterhead conveys" the same message. Avila, 84 F.3d at 229. This is particularly true given that dunning letters are reviewed for unlawfulness using an "unsophisticated-consumer" standard. E.g., Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000). Accepting Hanna's argument would mean that a lawyer could easily skirt the FDCPA simply by placing his law firm's name at the bottom of a dunning letter rather than his own.

[7] The Court reminds the parties that this case is on the September 2011 trial calendar. The parties should be fully prepared to try this matter by September 1, 2011.